UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| JAMES ELMER GROSS, SR. | |
| Plaintiff | Civil Action No. 7: 08-111-KKC |
| V. | |
| UNKNOWN DIRECTOR OF THE BUREAU OF PRISONS, ET AL. | MEMORANDUM OPINION AND ORDER |
| Defendants | |

\*\*\*\*  \*\*\*\*  \*\*\*\*

Plaintiff James Elmer Gross, Sr. ("Gross") has submitted a *pro se* civil rights complaint under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 2] The Court has granted his motion to proceed *in forma pauperis* by separate order.

The Court screens civil rights complaints pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607 08 (6th Cir. 1997). As Gross is appearing *pro se*, his complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action (a) is frivolous or malicious, or (b) fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

I.       **Factual Background**.

After operating a substantial drug-dealing and racketeering enterprise in Baltimore, Maryland from the late 1990s into the early 2000s, in 2001 Gross was arrested and in 2003 convicted of racketeering in violation of 18 U.S.C. § 1962(c); conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d); conspiracy to distribute and possession with the intent to distribute narcotics in violation of 21 U.S.C. § 846; malicious destruction of a building and vehicle by means of fire in violation of 18 U.S.C. § 844(I); use of fire to commit a felony in violation of 18 U.S.C. § 844(h)(1); two counts of witness tampering in violation of 18 U.S.C. § 1512(b)(1); and mail fraud in violation of 18 U.S.C. § 1341.  Gross was sentenced to a total term of 600 months in prison.  *United States v. Gross*, 2006 WL 1821196 (4th Cir. 2006).

In his Complaint, Gross asserts that during the course of his federal incarceration he has been transferred between at least six different federal penitentiaries, and shortly after his arrival at each, other prisoners have expressed their belief that he is an informant and their intention to seriously harm or kill him.  The source of this belief stems from an article published in the Baltimore Sun around the time of his highly-publicized trial.  After informing prison officials of these threats, BOP staff have consistently placed him in protective custody.  The thrust of Gross's Complaint is that this solution affords him too little freedom, and that the BOP must provide for his security without unduly inhibiting his freedom.  Gross asserts that there are only two ways to accomplish this: either housing him in a facility that does not have any inmates from the Baltimore metropolitan area, or to house him in a medium-security Federal Correctional Institution ("FCI").

Gross alleges that he has exhausted his remedies with respect to these issues as follows. On December 6, 2005, Gross filed Administrative Remedy ID # 400634 with the warden at USP-Terre Haute, although it appears it was not received until January 14, 2006. In his grievance, Gross requests information about whether any decision has been made regarding his request for a transfer to another institution for security purposes, and for further information regarding his need for protective custody at the transferee institution. In the warden's February 6, 2006 response, the warden responded that the decision had not yet been made, but that appropriate factors would be considered.

On March 26, 2006, Gross filed his appeal with the North Central Regional Office, in which he requested placement in a federal prison where his safety could be assured. In its April 20, 2006 response, the Regional Office stated that the investigation into Gross's need for a status change has been completed and that he had been verified as requiring placement in protective custody.

On May 2, 2006, Gross filed his appeal with the Central Office, again asserting that "The response to my BP-10 did not fully address my complaint. I requested to know what steps are being taken to remedy my problem and when." On June 27, 2006 the Central Office again responded that no decision had been made regarding a transfer to another institution.

Gross filed his Complaint in this action on May 28, 2008, naming as defendants 44 individuals involved in decisions regarding his security classification and transfer at each of the facilities in which he has been housed since 2004, as well as the Regional Director and the BOP's national Director.

## II. Discussion.

There are a number of factors which would dictate, at a minimum, dismissal of Gross's Complaint without prejudice.  First, based on the allegations of the Complaint, this Court lacks personal jurisdiction over all of the Defendants who are not physically located in the Commonwealth of Kentucky, because these defendants do not have any, let alone minimum, contacts with Kentucky required to establish personal jurisdiction under the Due Process Clause.  *Turner v. Ramirez*, 194 F.3d 1314 (6th Cir. 1999) (*citing Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991)); *see also Thomas v. Ashcroft*, 470 F.3d 491, 495-96 (2nd Cir. 2006) (district court in New York lacked personal jurisdiction over DEA agents in California for *Bivens* claims arising from their conduct during arrest in Los Angeles); *Bailey-El v. Federal Bureau of Prisons*, 246 Fed. App'x 105, 108 (3rd Cir. 2007) (affirming dismissal of individual out-of-state BOP defendants for lack of personal jurisdiction).

The Court does possess personal jurisdiction over the Kentucky defendants by virtue of their physical presence within the state.  But Gross's Complaint is subject to dismissal with respect to these Defendants for a second, distinct reason: his failure to exhaust his administrative remedies with respect to his claims against them.  The documents described above establish that Gross commenced the exhaustion process on December 6, 2005, by filing a grievance with the warden at USP-Terre Haute, and by pursuing that grievance to its completion up to and including a final resolution by the BOP's Central Office on June 27, 2006.  However, Gross was not transferred to USP-Big Sandy in Kentucky until November 29, 2007.  Thus, while Gross could be said to have exhausted his administrative remedies with respect to administrative review

4

of the conduct of the officials at USP-Terre Haute, he did not and could not have received administrative review by the BOP of the conduct undertaken by officials at USP-Big Sandy nearly two years after he initiated the inmate grievance process. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) ("A grievance obviously cannot exhaust administrative remedies for claims based upon events that have not yet occurred. Nor does a grievance exhaust administrative remedies for all future complaints of the same general type.") (prisoner's formal grievance for alleged lack of medical care for injured shoulder did not satisfy exhaustion requirement for claims alleged in complaint which related to numerous incidents that took place subsequent to the filing of the grievance). Because Gross did not exhaust his administrative remedies with respect to review of the conduct of the only BOP officials over which this Court possesses personal jurisdiction, all of the claims in the Complaint are subject to dismissal without prejudice. 28 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Wyatt v. Leonard*, 193 F.3d 876, 877-78 (6th Cir. 1999); *Jones v. Bock*, 127 S.Ct. 910, 916-17 (2007) (dismissal of complaint appropriate on initial screening where existence of affirmative defense, such as failure to exhaust administrative complaint, is apparent from complaint itself).

While the foregoing establishes that Gross's Complaint is subject, at least, to dismissal without prejudice, other considerations indicate that the dismissal must be with prejudice.

Gross has included with his Complaint a substantial volume of correspondence with persons both inside and outside the BOP regarding his concerns about his safety and security. This correspondence includes a September 14, 2005 letter from Gross to Senator Bayh requesting his assistance "to be placed in a safe and healthy environment" and a September 15, 2005 letter

from attorney Francis A. Pommett, III on his behalf to the BOP's North Central Regional Office complaining about his personal safety and describing the "Bureau of Prisons' solution ... to place Mr. Gross on permanent lockdown" as "inhumane and cruel."

The language of these letters indicated that at least by this date, if not substantially earlier, Gross was aware of any possible claim against the BOP arising out of his classification and housing, and hence his claim had accrued for statute of limitations purposes. Federal law supplies its own rule of claim accrual for civil rights claims. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (6th Cir. 1984)); *Heard v. Sheahan*, 253 F.3d 316, 317-18 (7th Cir. 2001). A cause of action "accrues" and the statute of limitations thereon begins to run when a plaintiff knows, or has reason to know through the exercise of reasonable diligence, of the injury that provides the basis for the claim. *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005); *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991) (courts look for the event that should alert a typical lay person to protect his or her rights).

At the time of this correspondence in September 2005, Gross was incarcerated at U.S.P.-Terre Haute in Terre Haute, Indiana. Because federal law does not supply its own statute of limitations for civil rights claims, federal courts borrow the applicable statute of limitations from the state in which the underlying claim arose. The Indiana statute of limitations that is borrowed for civil rights actions is the two-year statute of limitations for personal injury claims found in I.C. 34-11-2-4. *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir. 2000). Accordingly, if the statute of limitations for these claims began to run more than two years prior to the date Gross filed his Complaint in this action on May 28, 2008, they are time-barred.

6

In determining the timeliness of Gross's Complaint, this Court has previously held that the running of the statute of limitations is tolled while the inmate pursues the prison's grievance process. *Cuco v. Federal Medical Center*, 2006 WL 1635668 (E.D. Ky. 2006), *aff'd*, 2007 Wl 4437958 (6th Cir. 2007). Gross did not complete that process until June 27, 2006, and filed this Complaint on May 28, 2008, less than two years after that date.

However, Gross's claims remain untimely-filed. In *Cuco*, the Court expressly rejected the argument that accrual of claims is deferred until completion of that process, but only tolled while the inmate diligently pursues exhaustion. The distinction is outcome-determinative in this case. If Gross's claims accrued no later than September 15, 2005, but the running of the statute of limitations were tolled during the 203-day period when he was exhausting his administrative remedies from December 6, 2005 to June 27, 2006, the statute began to run 203 days after September 15, 2005, on April 7, 2006. Because his Complaint was filed more than two years after this date, it is time-barred under I.C. 34-11-2-4.

In addition, it is not certain that Gross is entitled to any tolling of the statute of limitations for his invocation of the BOP's grievance process, because it is clear that he did not timely invoke it. 28 C.F.R. § 542.18 requires an inmate to file his initial grievance with the warden no more than twenty (20) days of the event complained of. Gross was clearly aware of the basis for his claim no later than mid-September 2005, if not much earlier, but did not file a grievance regarding the matter until December 2005. The Supreme Court has held that in order to satisfy the requirement that administrative remedies be exhausted prior to filing suit, those remedies must be exhausted properly and within the time frames required by the remedy process.

*Woodford v. Ngo*, 126 S.Ct. 2378, 2387-88 (2006). Gross clearly failed to satisfy this requirement, and that failure is a basis for declining to equitably toll the running of the statute of limitations, if not to decline relief outright. *Id*. at 2387. Accordingly, the statute of limitations for these claims expired no later than April 7, 2008, if not September 15, 2007, and Gross's claims are hence time-barred.

Finally, the Court concludes that without regard to these procedural shortcomings, Gross's claim simply fails on the merits. In this regard, it is important to distinguish what Gross claims from that which he does not. Gross does not allege that his placement in protective custody, which BOP officials have repeatedly done, does not adequately provide for his personal security. Gross does not allege that he has been attacked or physically harmed when he was placed in segregation. He appears to suggest that he has been threatened while in segregation, but mere threats alone, unaccompanied by any physical injury or a credible basis to conclude it will inevitably occur, fails to state a claim for violation of his civil rights under federal law. 42 U.S.C. § 1997e(e) ("[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury ... without a prior showing of physical injury.") And the record clearly indicates that every time Gross has sought the safety of protective custody, BOP officials have granted it. When Gross has been involved in altercations or hostile discussions with other prisoners and informed BOP staff, he has been quickly given the additional personal security afforded by that classification. And when Gross has pursued transfer to another institution because of hostility from other inmates at the place of his present confinement, BOP officials have pursued that option for him.

What Gross does appear to claim is that while protective custody or placement in segregated housing adequately protect him, the very aspects of that confinement which protect him, including limited interaction with other prisoners, are too restrictive for his liking. Placement in protective custody necessarily limits the amount an inmate may spend out of his cell, in the yard, or in common areas. In short, Gross does not contend that prison officials have failed to offer him an adequate means of protection, but rather that they have failed to provide him sufficient protection in the less restrictive environment of the general population.

Simply put, prison officials are not constitutionally required to guarantee a prisoner's safety under terms and conditions dictated by the prisoner. A prisoner is entitled to adequate protection from harm, but is not entitled to direct prison officials on the means to accomplish it. Faced with an inmate population that wrongly believes that Gross is an informant, BOP officials acted reasonably to protect him within the limitations imposed upon them by the facility in which he is housed and the budgetary and logistical constraints of the agency. The BOP's placement of Gross in protective custody remains a reasonable decision so long as the threat to Gross's safety persists. *Cf. DiMarco v. Wyoming Dept. of Corrections Div. of Prisons, Wyo. Women's Center*, 300 F. Supp. 2d 1183 (D. Wyo. 2004) (placement of inmate in segregated confinement with severely limited privileges for 438 days for inmate's own protection was not cruel and unusual punishment; placement of inmate in administrative segregation secured safety of inmate and other inmates and inmate was provided the basic necessities of food, shelter, clothing and medical treatment); *Zatler v. Wainright*, 802 F.2d 397, 403 (11th Cir. 1986) (inmate who refused offer of protective custody because he found conditions unfavorable failed to establish prison

9

officials' deliberate indifference under the Eighth Amendment for failure to protect him where conditions of protective custody were not so offensive or constraining that such custody would independently constitute cruel and unusual punishment); *Nolen v. Goord*, 2007 WL 627504 (2d Cir. 2007) (dismissal of failure to protect claim affirmed where plaintiff failed to present evidence that offer of protective custody three months before assault was not a reasonable response to the risk presented).

Nor is the BOP constitutionally required to send him to a United States Penitentiary free of inmates originally from the Baltimore, Maryland area. The BOP retains wide discretion in determining where to place an inmate under 18 U.S.C. § 3621(b). *See also Ward v. Dyke*, 58 F.3d 271 (6th Cir. 1995) (inmate has no constitutional right not to be transferred from one level II institution to another when prison officials, in exercise of their discretion, determine that prisoner is an adjustment problem). Even assuming that *any* U.S. Penitentiary in the BOP system satisfies Gross's exclusionary criteria (which Gross's tour of numerous USPs across the country suggests that none may), Gross's own allegations indicate that inmates not originally from Baltimore became convinced that he was an informant based upon other information, and thus such a transfer would not eliminate the very concern which Gross seeks to address. Given the manifest implausibility of finding a U.S.P. free of such inmates, assuming one exists, as well preventing any inmate from Maryland area from subsequently being transferred into that institution, during the entirety of Gross' fifty-year sentence, it is clear that the BOP is within its discretion to seek other means to adequately protect Gross's safety.

Gross' other alternative, to transfer him to a lower-security Federal Correctional Institution, is equally untenable. As the warden at USP-Terre Haute noted in his October 24, 2005 letter to Senator Barbara Mikulski of Maryland, because "Mr. Gross is a high security level inmate and has in excess of 39 years remaining to serve on his current sentence, he is not appropriate for transfer to a lower security level institution." Given the severity of Gross's numerous offenses, the BOP acted well within its discretion in refusing to consider transferring him to a lower-security institution. *Cf. Moore v. Litscher*, 2002 WL 31805012 (7th Cir. 2002).

### III. CONCLUSION

The Court being sufficiently advised, it is **ORDERED** as follows:

1. Plaintiff's Complaint [R. 2] is **DISMISSED WITH PREJUDICE.**

2. The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Chanced v. Scarman*, 117 F.3d 949 (6th Cir. 1997).

3. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

Dated this 30th day of May, 2008.



Signed By:
*Karen K. Caldwell*
United States District Judge